**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | |
|---|---|
| **JAMES ROGERS** § | |
| § | |
| **V.** § | |
| § | **A-09-CA-207-LY(AWA)** |
| **MICHAEL J. ASTRUE,** § | |
| **COMMISSIONER OF THE** § | |
| **SOCIAL SECURITY ADMINISTRATION** § | |

**REPORT AND RECOMMENDATION
OF THE UNITED STATED MAGISTRATE JUDGE**

TO: THE HONORABLE LEE YEAKEL
UNITED STATES DISTRICT JUDGE

Before the Court are: Plaintiff's Original Complaint seeking reversal of the final decision of the Social Security Administration (Clerk's Doc. No. 1); Plaintiff's Brief in Opposition to the Commissioner's Decision (Clerk's Doc. No. 8); and Defendant's Brief in Support of the Commissioner's Decision (Clerk's Doc. No. 11). Also before the Court is the Social Security record filed in this case (Cited as "Tr."). Plaintiff James Rogers appeals from the Commissioner's determination that he is not "disabled" and presents for review, the claims that the ALJ: (1) erred in weighing the treating and examining physicians' records; (2) erred in assessing Plaintiff's residual functional capacity ("RFC"); and (3) that the vocational expert's ("VE") testimony refuted the ALJ's opinion that Plaintiff could return to his past relevant work. The undersigned submits this Report and Recommendation to the United States District Court pursuant to 28 U.S.C. § 636(b) and Rule 1(h) of Appendix C of the Local Court Rules of the United States District Court for the Western District of Texas, Local Rules for the Assignment of Duties to United States Magistrate Judges.

**I. GENERAL BACKGROUND**

On February 13, 2001, Plaintiff James Rogers ("Plaintiff") filed his Applications for Social Security Disability Insurance Benefits ("DIB") alleging that he became unable to work on July 19,

1999, due to chest pain, swelling in the feet and legs, as well as back and hip pain. On January 16, 2004, after a hearing, an Administrative Law Judge ("ALJ") issued a decision finding that Plaintiff was not under a disability as defined by the Social Security Act. On September 23, 2005, the Appeals Council concluded that there was no basis for review and that the ALJ's decision was the "final decision of the Commissioner of Social Security."

On March 3, 2006, Plaintiff filed a lawsuit in federal District Court pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying Plaintiff's application for DIB benefits. *See Rogers v. Barnhart*, A-06-CA-159-LY (W.D. Tex. 2007). The District Court remanded that case to the Commissioner with directions to consider certain additional medical evidence submitted by the Claimant after the hearing that the ALJ apparently failed to consider.

On March 24, 2008, the ALJ held a second hearing . (Tr. 309-321). On April 22, 2008, the ALJ issued a second unfavorable decision finding Plaintiff not disabled. (Tr. 306-19). The Appeals Council determined there was no basis for review on January 30, 2009. (Tr. 300). Thus the opinion of the Commissioner became final for purposes of the Court's review. Plaintiff filed the instant action on March 9, 2009.

## II. FINDINGS OF ADMINISTRATIVE LAW JUDGE

The ALJ found that Rogers has the following severe impairments: hypertensive cardiovascular disease, degenerative disc disease, diabetes, and a history of syncopal episodes. (Tr. 311). The ALJ found that Plaintiff does not have an impairment or combination of impairments that meet or medically equal one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 313). In regard to residual functional capacity ("RFC"), the ALJ found that Plaintiff has the RFC to perform sedentary work as defined in 20 C.F.R. 404.1567(a) except that Rogers should not

2

be required to work around significant unprotected heights or potentially dangerous, unguarded moving machinery. (Tr. 314). After considering Plaintiff's age, education, work experience, and RFC, the ALJ found that he is capable of performing his past relevant work as a residential supervisor of students for the Texas Youth Commission. (Tr. 319). Accordingly, the ALJ found that Rogers is not disabled as defined in the Act (Tr. 319).

### III. ISSUES BEFORE THE COURT

Plaintiff contends that the ALJ's decision is not supported by substantial evidence and is not based upon the proper legal standards. Rogers argues that he cannot return to his past relevant work. Rogers argues that the ALJ erred in weighing the treating and examining physician's records. *See* Plaintiff's Brief at p. 6-11. He next argues that the ALJ incorrectly assessed his RFC. *Id.* at p. 11-13. Lastly, Plaintiff argues that the VE's testimony refutes a finding that he could return to his past relevant work. *Id.* at p. 13-15.

### IV. STANDARD OF REVIEW

In Social Security disability appeals, the limited role of the reviewing court, as dictated by 42 U.S.C. § 405(g), is to determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole and whether the Commissioner applied the proper legal standard. *Kinash v. Callahan*, 129 F.3d 736, 738 (5th Cir. 1997); *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995). "Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Villa v. Sullivan*, 895 F.2d 1019, 1021–22 (5th Cir. 1990) (quoting *James v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)). Courts weigh four elements of proof when determining whether there is substantial evidence of a disability: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) the claimant's subjective evidence of pain and disability; and (4) the claimant's age,

education, and work history. *Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir. 1995). However, the reviewing court cannot re-weigh the evidence, but may only scrutinize the record to determine whether it contains substantial evidence to support the Commissioner's decision. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). "The Commissioner, rather than the courts, must resolve conflicts in the evidence." *Martinez*, 64 F.3d at 174. If supported by substantial evidence, the Commissioner's findings are conclusive and are to be affirmed. *Crowley v. Apfel*, 197 F.3d 194, 197 (5th Cir. 1999). A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings exist to support the decision. *Johnson v. Bowen*, 864 F.2d 340, 343–44 (5th Cir. 1988).

## V. ANALYSIS

**A.    Did the ALJ fail to give proper weight to the treating and examining physician's records?**

Plaintiff's general contention is that the ALJ's finding that he can return to his past relevant work is not supported by the evidence. As part of this contention, he asserts that the ALJ erred in weighing the treating and examining physicians' records.

While an ALJ should afford considerable weight to opinions and diagnoses of treating physicians when determining disability, sole responsibility for such determination rests with the ALJ. *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000). If evidence supports a contrary conclusion, an opinion of any physician may be rejected. *Id.* In addition, a treating physician's opinion may be given little or no weight when good cause exists. *Id.* at 455-56. "Good cause may permit an ALJ to discount the weight of a treating physician relative to other experts where the treating physician's evidence is conclusory, is unsupported by medically acceptable clinical, laboratory, or diagnostic techniques, or is otherwise unsupported by the evidence." *Id.* at 456.

4

Plaintiff first argues that the ALJ did not give adequate weight to the evidence that Plaintiff has suffered low blood pressure and syncope or fainting. (Tr. 188, 189, 195, 199-202, 210-211, 498, 544). Plaintiff testified that he suffered three syncopal spells in 2004, two in 2005, two in 2006, and two in 2007. (Tr. 314). While finding that Plaintiff's history of syncopal episodes to be severe (Tr. 311), the ALJ noted that the Plaintiff's allegations of the frequency of these fainting spells were not supported by the medical evidence during the relevant period under consideration (July 19, 1999 through December 31, 2004). (Tr. 316). The medical records reflect that Plaintiff reported three fainting episodes during the relevant period – one in June 1997, one four months later, and one in January of 1998. (Tr. 199). Plaintiff also reported frequent episodes of dizziness in 2001 and one episode in 2003. (Tr. 210, 35). However, as the ALJ noted, when seen on August 29, 2002, the Plaintiff reported only occasional dizziness which was better controlled with treatment. (Tr. 316).

At the second hearing before the ALJ held on March 24, 2008, medical expert Dr. James Beard testified. Dr. Beard testified that the medical records reflect that Plaintiffs' fainting episodes were most likely simple vasovagal syncope or in his own experience hypotensive episodes based on blood pressure medication. He testified that there was no record of or indication of a seizure disorder. Dr. Beard testified that a change in medication could alleviate the syncopal episodes. (Tr. 753). Dr. Beard testified that Plaintiff would be subject to hazard precautions such as not working at heights or near dangerous machinery, but that Plaintiff should be able to tolerate light work. (Tr. 749). The ALJ properly included these precautions into his RFC assessment (Tr. 314-19)

Dr. Beard testified that based upon the objective medical evidence, the Plaintiff's alleged frequency of the syncopal spells was not supported by the evidence. (Tr. 316). The court's function is to determine whether substantial evidence supports the ALJ's decision. A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings exist to support

the decision. *Johnson v. Bowen*, 864 F .2d 340, 343 (5th Cir.1988). In this case the ALJ properly relied on the testimony of the medical expert.

Plaintiff also argues that the ALJ failed to consider Plaintiff's coronary artery disease. Dr. Beard testified that the records reflect that Plaintiff had a history of coronary artery disease, but no major ongoing coronary artery disease. (Tr. 748, 749). While Plaintiff showed evidence of a "small reversible defect consistent with ischemia," Dr. Beard noted that during the relevant period, Plaintiff was basically asymptomatic. (Tr. 749, 750). The ALJ adopted Dr. Beard's opinion that Plaintiff did not have severe coronary artery disease (Tr. 312).

Plaintiff also asserts that he suffered from uncontrolled hypotension (low blood pressure). *See* Plaintiff's's Brief at p. 3, 4, 7, and 10. However, those records show that Michael Lechin, M.D., diagnosed uncontrolled hypertension (high blood pressure) not hypotension. (Tr. 188, 189).

The record shows that the ALJ considered Plaintiff's severe hypertensive cardiovascular disease in detail in assessing his claim. (Tr. 311). The ALJ noted a nuclear cardiology report that showed that Plaintiff had normal myocardial perfusion, normal regional wall motion, and an ejection fraction of 60 percent in December 1999 (Tr. 316). He also cited Plaintiff's May 2000 stress echocardiogram that was normal (Tr. 316, 163). The ALJ considered Dr. Lechin's finding that Plaintiff's blood pressure was elevated in October 2000, but otherwise, his physical examination was unremarkable (Tr. 316, 186, 187). The ALJ noted that, in June 2001, there was radiological evidence of cardiomegaly, but Plaintiff's respiratory and cardiovascular examination were unremarkable (Tr. 316, citing 213-16). The ALJ also considered a nuclearcardiology report from September 2003 that revealed only a small reversible defect consistent with ischemia in the LAD territory. Plaintiff's ejection fraction was again normal at 63 percent and he had normal regional wall motion (Tr. 316,

278). The record shows that the ALJ thoroughly considered the significance of Plaintiff's heart condition.

Plaintiff complains that the ALJ did not properly consider the evidence in the record of his degenerative disc disease and chronic pain. In October 2003, Plaintiff's physician, Kelly Lobb, M.D., diagnosed him with chronic pain with degenerative disc disease. *See* Plaintiff's Brief at p. 8, (Tr. 271). In his Findings of Fact, the ALJ determined that Plaintiff's degenerative disc disease was a severe impairment. (Tr. 311). However he cited evidence that Plaintiff was positive for Waddell signs in 2002, and that in 2001 Dr. Selvakumarraj found that muscle strength was intact, nerves were intact, sensory exam was normal, and that Plaintiff had no problems walking or bending to pick up a pen. (Tr. 315). Dr. Francisco Leal examined Plaintiff in 2001 and diagnosed lumbar strain; but also found that neurological, strength, tendon reflexes, and nerve conduction studies were all normal. (Tr. 315).

Consistently, in his credibility analysis, the ALJ found Plaintiff's claims of disabling pain were not fully credible (Tr. 314-15). Although Dr. Lobb found that Plaintiff suffered from degenerative disc disease and chronic pain, he stated "I find no evidence of serious spinal pathology, neuropathy, or ridiculopathy. I feel his pain symptoms are consistent with a mechanical low back pain. He also displays significant pain behavior. I recommend continued conservative care. We discussed a home exercise program beginning with walking and stretching. I also recommend a chronic pain program. . . . I recommend that he enter the program with an emphasis on tapering the Hydrocodone and vocational rehabilitation." (Tr. 271). Dr. Lobb's opinion that Plaintiff should reduce his use of prescription pain medication and that he would benefit from vocational rehabilitation fully supports the ALJ's determination that Plaintiff was not disabled.

Moreover, Plaintiff was examined by Dr. Francisco Leal for purposes of determining Plaintiff's physical capacity on December 18, 2007, at the request of his attorney. (Tr. 375-379). Dr. Leal diagnosed Plaintiff with diabetes, hypertension, chronic low back pain, and a history of syncope. (Tr. 375). Dr. Leal stated that Plaintiff's limitations were as follows: he could lift or carry 21 to 25 pounds, that he must alternate sitting and standing, that he had no limitations on sitting, repetitive operation of hand controls, and repetitive operation of foot controls that he could stoop two hours, kneel two hours, crawl for four hours, push or pull for four hours, and that he could never climb or balance, work at heights, or with moving machinery. (Tr. 377). Dr. Leal found that Plaintiff had no objective signs of pain, but that he could not reliably attend a 40 hour work week. (Tr. 378). Dr. Leal stated that Plaintiff suffers from chronic lower back pain and that the pain was "moderate." (Tr. 378). However, Dr. Leal examined Plaintiff again on January 2, 2008 (approximately two weeks later), and found that "I do not see any one particular problem is severe enough to not allow him to work . Patient has not sought out aggressive therapy." (Tr. 380). Thus the ALJ's determination that the objective medical evidence does not support the Plaintiff's claim of disabling pain is supported by substantial evidence in the record. (Tr. 315).

Plaintiff also asserts that the ALJ did not properly consider the evidence that Plaintiff suffered from renal insufficiency, gout, and peripheral lower extremity edema (swelling feet). *See* Plaintiff's Brief at p. 7, (Tr. 195-196). The medical evidence from the relevant period reflects that Plaintiff occasionally suffered some mild swelling of the extremities, but that is resolved over time and appeared to be related to particular medications. (Tr. 316-317). After considering the medical evidence, the ALJ determined that "the record fails to provide evidence of significant and ongoing flare-ups due to gouty arthritis." (Tr. 317).

Lastly with regard to this issue, Plaintiff asserts that the ALJ failed to properly consider the evidence of his depression. On June 30, 2004, Dr. Leal prescribed Prozac stating that "Patient has depressive symptomology" and that "the patient has depressed mood because he is unable to work . . . . I do not expect him to ever get over this disability unless he is retrained." (Tr. 276). The Court finds that the ALJ properly considered the evidence of Plaintiff's depression when he found that Plaintiff's depression was not a severe impairment. He concluded that Plaintiff had mild limitations in his daily activities and social functioning; no limitations in concentration, persistence, or pace; and no episodes of decompensation. (Tr. 312). Thus, he found that Plaintiff had no severe mental impairment (Tr. 312-13). 20 C.F.R. § 404.1520a(d)(1).

Plaintiff relies on a report from Frank Leal, M.D., to show that he is disabled. *See* Plaintiff's Brief at p. 8 (citing Tr. 276). The ultimate issue of disability is reserved to the Commissioner, and even a treating physician's opinion on that topic is not entitled to any special significance, much less controlling weight. *Frank v. Barnhart*, 326 F.3d 618, 620 (5th Cir. 2003); *see* 20 C.F.R. § 404.1527(e). Issues reserved to the Commissioner include whether or not an individual is disabled. *See* 20 C.F.R. § 404.1527(e)(1)(2). It is significant that in this report, Dr. Leal stated that he did not expect Plaintiff to get over his disability unless he was retrained (Tr. 276). Ultimately the ALJ considered Dr. Leal's history of treatment and conflicting statements about Plaintiff's ability to work. (Tr. 315-317, 508, 517, 537, 536, 533). Because the objective findings in Dr. Leal's progress notes did not support a complete inability to work, the ALJ properly discounted that opinion (Tr. 318). The ALJ found that "the assessments and statements of Dr. Leal are inconsistent as a whole" and thus afforded those statements and assessments little weight. (Tr. 318). Good cause to disregard the opinions of a treating physician is found where such opinions "are brief and conclusory, not supported by medically acceptable clinical laboratory diagnostic techniques, or otherwise

9

unsupported by the evidence." *Myers v. Apfel*, 238 F.3d 617, 621 (5th Cir. 2001). The ALJ's finding is supported by the evidence in the record. The ALJ had good cause for affording Dr. Leal's opinion on the ultimate issue "little weight" (Tr. 318). *Perez v. Barnhart*, 415 F.3d 457, 465-66 (5th Cir. 2005).

Plaintiff complains that the ALJ did not properly use the factors set forth in *Newton v. Apfel* in discounting his treating physician's opinion. However, "the Court's decision in *Newton* is limited to circumstances where the administrative law judge summarily rejects the opinions of a claimant's treating physician, based only on the testimony of a non-specialty medical expert who had not examined the claimant." *Contreras v. Massanari*, No. 1:00-CV-242-C, 2001 WL 520815, at *4 (N.D. Tex. May 14, 2001). In this case, the ALJ did not discount Dr. Leal's opinion based upon the testimony of a non-examining non-specialty medical expert; instead the ALJ discounted Dr. Leal's opinion based upon the fact that Dr. Leal offered not one opinion, but various conflicting opinions. Thus the ALJ was not required to apply the *Newton* factors.

The Court finds that the ALJ performed a comprehensive review of the medical evidence and explained his reasons for the weight he assigned that evidence. The ALJ's determination is supported by substantial evidence.

**B. Was the ALJ's determination of Plaintiff's RFC supported by substantial evidence?**

Plaintiff asserts that the ALJ erred in finding that Plaintiff could perform sedentary work and thus his past relevant work as a residential supervisor of students for the Texas Youth Commission. Plaintiff argues that the evidence presented regarding Plaintiff's syncopal episodes was not properly taken into account in formulating Plaintiff's RFC. Plaintiff asserts that the frequency of the syncopal episodes would result in excessive absenteeism resulting in termination. *See* Plaintiff's Brief at p. 12.

10

The ALJ determined that, through his date last insured, Plaintiff had an RFC for sedentary work that did not require work around significant unprotected heights or potentially dangerous, unguarded moving machinery. (Tr. 314). The evidence shows that during the second administrative hearing, the ALJ included seizure precautions in the hypothetical he presented to the VE by asking the VE to consider a person who "should not work at either significant unprotected heights nor around potentially dangerous, unguarded moving machinery as a precaution for intermittent syncopal episodes" (Tr. 755). While Plaintiff claimed almost daily fainting episodes,[1] the ALJ noted that the evidence did not support this claim. (Tr. 316). The evidence does not support Plaintiff's claim that the RFC was incorrect as it did not account for excessive absenteeism. The VE at the second hearing opined that a person having up to three syncopal episodes a month could still sustain and maintain employment in Plaintiff's PRW (Tr. 756-57). Thus, the ALJ fully accounted for Plaintiff's documented syncopal symptoms in his hypothetical questions to the VE. The Court finds that the VE's testimony provides substantial evidence supporting the ALJ's determination that Plaintiff was not disabled. *Masterson v. Barnhart*, 309 F.3d 267, 273 (5th Cir. 2002).

Additionally, Plaintiff argues that, on remand, the ALJ was prohibited from assessing him with a second RFC (range of sedentary work) different from his first RFC (range of light work) assessment. *See* Plaintiff's Brief at p. 12. The record shows that the ALJ followed the Remand Order by redetermining Plaintiff's RFC based on all of the evidence, including the new medical evidence (Tr. 309). An ALJ is free to reevaluate the facts after the Appeals Council remands a case. *Houston v. Sullivan*, 895 F.2d 1002, 1015 (5th Cir. 1989). Plaintiff's claim that the ALJ was somehow bound to his prior RFC assessment is without merit.

---

[1] The evidence shows that Plaintiff suffered intermittent dizziness, but not fainting spells. (Tr. 296, 210).

The evidence shows that the ALJ considered the entire record in determining Plaintiff's RFC. (Tr. 310, 314). Only after a thorough evaluation of the evidence and setting out lengthy reasoning did the ALJ determine that Plaintiff possessed the RFC to perform his prior work through the date he was last insured (Tr. 310; 314-19). Plaintiff's claim on this issue fails.

**C. Did the VE's testimony support the ALJ's determination that Plaintiff could perform his past relevant work?**

The VE testified that Plaintiff could perform his past relevant work as a residential or dormitory supervisor with the Texas Youth Commission regardless of whether the job was classified as sedentary or light work. (Tr. 755). Plaintiff argues that the VE at the second hearing testified that his proper DOT title was "residential dormitory supervisor" while the VE that testified at the first hearing classified him as a "correctional officer." Plaintiff argues the case should be remanded so that the testimony of the two experts can be reconciled. Plaintiff also argues that the "residential dormitory supervisor" title does not properly describe the job Plaintiff performed as described by him. Plaintiff also asserts that he cannot perform the "residential dormitory supervisor" position with his tendency to faint.

As the Commissioner points out, Plaintiff relies on no case stating that the VE's are required to offer identical expert opinions. *See* Commissioner's Brief at p. 10. This argument is without merit.

With regard to the "residential dormitory supervisor" classification given by the second VE, the record shows that the VE at the second hearing explicitly considered the Plaintiff's description of his past relevant work duties in assessing whether or not he could still perform that work. The VE stated "the title I provided specifically defines that he testified to here today from a job description standpoint. . . .sedentary work does not preclude any walking." (Tr. 757). Thus the VE's

testimony as to Plaintiff's job title fully took into account the actual duties of that job, and supports the ALJ's finding that Plaintiff could perform his past relevant work.

Plaintiff lastly argues that his episodes of syncope were not properly taken into account by the VE in determining that he could perform his past relevant work. However, the ALJ relied on Plaintiff's own testimony at the hearing that his fainting spells occur at a rate of four a year or less, and found that Plaintiff does not faint daily, as he seems to claim here. (Tr. 733-34). The ALJ's hypothetical and the VE's testimony provided for seizure precautions, and properly took into account absenteeism based upon Plaintiff's own description of the frequency of his syncopopal episodes. This claim is without merit.

## VI. RECOMMENDATION

Based upon the foregoing, the undersigned finds that the Commissioner's decision is supported by substantial evidence and correctly applies the relevant legal standards. Accordingly, the undersigned Magistrate Judge **RECOMMENDS** that the District Judge **AFFIRM** the decision of the Commissioner in this case and **ENTER JUDGMENT** in favor of the Defendant.

## VII. WARNINGS

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *Battles v. United States Parole Comm'n,* 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from de novo review by the district court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from

appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the district court. *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140, 150-153, 106 S. Ct. 466, 472-74 (1985); *Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

To the extent that a party has not been served by the Clerk with this Report & Recommendation electronically pursuant to the CM/ECF procedures of this District, the Clerk is directed to mail such party a copy of this Report and Recommendation by certified mail, return receipt requested.

SIGNED this 15th day of January, 2010.

_____
ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE